UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                    )
GEOVERA SPECIALTY INSURANCE          )
COMPANY f/k/a USF&G SPECIALTY        )
INSURANCE COMPANY,                   )
                                    )
          Plaintiff,                 )
                                    )
     v.                              )     C.A. No. 16-432 WES
                                    )
KURT POULTON,                        )
                                    )
          Defendant.                 )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

I. Background

        Plaintiff GeoVera Specialty Insurance Company ("GeoVera")
issued a homeowner's insurance policy to Defendant Kurt Poulton
("Poulton") in 2006 for his residence located in Tiverton, Rhode
Island. The policy was effective from October 2006 through
October 2007, and was renewed for one year thereafter, expiring
in October 2008. The policy included a $500,000 limit for
personal liability. In June 2016, Poulton asked GeoVera to
defend and indemnify him in a civil action pending in Newport
County Superior Court involving property he owned in Portsmouth,
Rhode Island. The background of that lawsuit is as follows: In
2005, Sandy Point Farms, Inc. ("the Farm") initiated litigation
against Sandy Point Village, LLC (controlled by co-members

Poulton and Robert J. Kielbasa) about its alleged misuse of its real property in Portsmouth that abuts the Farm's property, and the resulting damage to the Farm's property ("state court action"). The Farm alleged that Sandy Point Village, LLC used impermissible drainage systems to drain effluent and water from the apartment complex located on the land and that this drainage caused erosion and a permanent change to the water table on the Farm's property, which in turn led to the delay of the development of the Farm's property. In 2010, the Farm amended its complaint to add Poulton and Kielbasa as individually named defendants, allegations about damage caused by a second lot of abutting land owned by Poulton and Kielbasa, and a count for negligence.

GeoVera replied to Poulton's request for defense and indemnification with a letter stating that, in order to finalize its investigation into Poulton's claim, it needed additional information and documents. GeoVera was clear that it was neither accepting nor rejecting Poulton's tender of the state court action for defense and indemnification. Poulton quickly responded to GeoVera's letter with another letter, claiming that GeoVera had a legal obligation to immediately accept his request to defend and indemnify and giving GeoVera an ultimatum: either agree to defend him or he would file a third-party complaint.

GeoVera's response in early August asserted that, while its investigation thus far had not indicated that it had a duty to defend and indemnify Poulton, GeoVera was willing to provide a defense under a reservation of rights pending the completion of its investigation and/or a judicial determination of coverage. GeoVera also filed its complaint in this case, seeking a series of declaratory judgments that GeoVera's policy did not cover Poulton for his alleged wrongdoing to the Farm's property and GeoVera did not have a duty to defend or indemnify Poulton in the state court action.

Poulton filed a counterclaim, alleging that GeoVera's offer to defend him under a reservation of rights was made in bad faith in violation of Rhode Island General Laws § 9-1-33. Poulton seeks a declaratory judgment that GeoVera owes him a duty of defense and indemnification against the Farm's claims and that GeoVera is not entitled to recover any expenses it incurs under a reservation of rights.

There are four motions currently pending before the Court: (1) GeoVera's combined Motion for Judgment on the Pleadings declaring that Poulton is not entitled to insurance coverage and Motion To Dismiss Poulton's counterclaim (ECF No. 8); (2) Poulton's Motion for Judgment on the Pleadings that Poulton is entitled to a defense from GeoVera in the state court action

(ECF No. 13); (3) Poulton's Motion To Dismiss or, in the alternative, to stay this case pending resolution of the state court action (ECF No. 14); and (4) Poulton's Motion To Certify a Question of Law to the Rhode Island Supreme Court (ECF No. 15).

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Coll. Hill Properties, LLC v. City of Worcester</u>, 821 F.3d 193, 195–96 (1st Cir. 2016) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. The Court may supplement the facts and inferences drawn from the complaint with information "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." <u>Guadalupe-Baez v. Pesquera</u>, 819 F.3d 509, 514 (1st Cir. 2016) (quoting <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011)). In this case, GeoVera's complaint includes the complaints from the state court action, the insurance policy, and a series of letters it

exchanged with Poulton, all of which the Court has considered in resolving the pending motions.

The legal lens through which the Court considers a motion for judgment on the pleadings is the same as that for a motion to dismiss for failure to state a claim. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43–44 (1st Cir. 2007)). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." Id. (quoting R.G. Fin. Corp. v. Vergara–Nunez, 446 F.3d 178, 182 (1st Cir. 2006)).

III. Discussion

A. Whether GeoVera has a Duty To Defend Poulton in the State Court Action

GeoVera moves for judgment on the pleadings on three of its ten requests for declaratory judgment that it does not have a duty to defend or indemnify Poulton for any claim asserted by the Farm because: (1) the Farm's allegations in its Verified Amended Complaint ("Complaint") about the damage, the discovery of the damage, the communication of the damage to Poulton, and the initiation of litigation for the alleged damages caused by Poulton's use of his Portsmouth property, all predate the start

of GeoVera's policy coverage, meaning that the Farm has not alleged "property damage" caused by an "occurrence" as defined in GeoVera's insurance policies (Count I); (2) the Farm's claims are precluded from coverage by the policy's "business exclusion" (Count V); and (3) the Farm's claims are precluded from coverage by the policy's "pollution exclusion" (Count VI). Poulton is moving for judgment on the pleadings that it is entitled to a defense from GeoVera in the state court action.

Insurance companies have two broad obligations to their insureds: the duty to defend and the duty to indemnify. Travelers Cas. & Sur. Co. v. Providence Washington Ins. Co., 685 F.3d 22, 25 (1st Cir. 2012). As the First Circuit has explained:

> Whether an insurer's duty to defend arises from the inception of a lawsuit against its policyholder hinges 'on whether the complaint in the underlying tort action alleges facts and circumstances bringing the case within the coverage afforded by the policy. That question is resolved by comparing the complaint in that action with the policy issued by the insurer; if the complaint discloses a statement of facts bringing the case potentially within the risk coverage of the policy the insurer will be duty-bound to defend irrespective of whether the plaintiffs in the tort action can or will ultimately prevail.'

Id. (quoting Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978)); see also Emhart Indus., Inc. v. Century Indem. Co., 559 F.3d 57, 65 (1st Cir. 2009), as amended on denial of reh'g and reh'g en banc (Apr. 17, 2009). Pursuant to this "pleadings

6

test," the Court must focus exclusively on the factual allegations in the pleadings. Emhart Indus., Inc., 559 F.3d at 65 (citations omitted). "In determining whether the allegations in a complaint are sufficient to create a duty to defend, [the Court] appl[ies] general rules of contract construction and give[s] words their 'plain, ordinary meaning.'" Narragansett Jewelry Co. v. St. Paul Fire and Marine Ins. Co., 555 F.3d 38, 41 (1st Cir. 2009) (quoting Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1306–07 (R.I. 1994)). "Any doubts about the sufficiency of the allegations are resolved in favor of the insured." Id. "Rhode Island's pleadings test triggers the duty to defend only when the pleading allegations show the potential that property damage occurred during the policy period." Travelers Cas. & Sur. Co., 685 F.3d at 32. Once the duty to defend is triggered, the duty continues "until the coverage question is resolved either by the establishment of facts showing no potential for coverage or by the conclusion of the underlying lawsuit." Id. at 25 (citations omitted).

1. "Occurrence" of "Property Damage"

The personal liability section of the policy issued by GeoVera states, in relevant part, that:

> If a claim is made or a suit is brought against an 'insured' for damages because of . . . 'property damage' caused by an 'occurrence' to which this coverage applies, we will:

7

. . .

> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when our limit of liability for the 'occurrence' has been exhausted by payment of a judgment or settlement.[1]

Property damage is defined in the policy as "physical injury to, destruction of, or loss of use of tangible property."[2]  An occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . property damage."[3]

The operative complaint for assessing GeoVera's duty to defend is the Complaint filed by the Farm in state court in 2010.  In the Complaint, the Farm clearly states that it "seeks to recoup the damage that defendants' unreasonable drainage has caused, and also seeks injunctive relief ordering Defendants Poulton and Kielbasa to remediate their properties so as to eliminate the unreasonable flow of drainage and erosion onto

---

[1] Compl. Ex. C 16, ECF No. 1-3.

[2] Id. at 2.

[3] Id.

[the Farm's] property."[4]  The Complaint reflects several allegations that are tied to specific years or time periods, such as "[s]tarting no later than 2003, defendants illegally drained effluent and water from a 29 bedroom apartment complex and its parking lots onto Lot 17 through the use of illicit drainage conduits and due to failed septic systems of Lot 191."[5] In addition, the Farm alleges that it discovered the damage to its land allegedly caused by the Poultons in 2003, and thereafter experienced delays to the development of its property.[6]  Moreover, Poulton and Kielbasa allegedly made promises in Fall 2004 to "undertake remedial measures to stop the illegal run-off" from their two lots, but did not complete these measures.[7]  The Farm also alleges that Poulton and Kielbasa "consolidate[d] failed septic systems servicing" the apartment units on one of the lots in 2005, which "materially redirected water flow onto" the Farm's property.[8]  All of these allegations indicate that the alleged damage to the Farm's property was perpetrated, discovered, and discussed with Poulton prior to the

---

[4] Compl. ¶ 2, ECF No. 1-1.

[5] Id. ¶ 14.

[6] Id. ¶¶ 17-20.

[7] Id. ¶ 21.

[8] Id. ¶ 22.

inception of the insurance policy in question. Pursuant to the pleadings test applied in Rhode Island, this would negate GeoVera's duty to defend Poulton in the underlying state court action. See Travelers Cas. & Sur. Co., 685 F.3d at 25.

However, there are two broader allegations in the Complaint that are not tethered to a specific date or year: (1) "After Poulton and Kielbasa took title to Lot 192, they continued to maintain and use certain portions of the systems that [Sandy Point Village, LLC] previously installed, to the benefit of Lot 192 and to the detriment of [the Farm's property]"[9]; and (2) "Poulton and Kielbasa have also installed and/or maintained one or more PVC pipes and other drains and conduits on Lots 191 and 192 that unreasonably direct drainage of surface water and sediment directly onto Lot 17".[10] The Complaint does not include either the date Poulton and Kielbasa took title to Lot 192 or a date or timeframe during which they allegedly installed the "PVC pipes and other drains and conduits" on both lots. The Complaint indicates that there is a potential for coverage, however slight, because it is possible that these events occurred during the policy periods (October 2006 – October 2008) and given the liberal pleadings test applied in Rhode Island,

---

[9] Id. ¶ 15.

[10] Id. ¶ 16.

10

GeoVera's duty to defend has been triggered.  See <u>Travelers Cas.</u> <u>& Sur. Co.</u>, 685 F.3d at 25; <u>Flori</u>, 388 A.2d at 26.   The First Circuit has commented that:

> Rhode Island cases display a consistent message: lack of specificity in a complaint leaving in doubt whether a state of facts exists showing the case is within the risk of coverage, or pleadings that display the existence of a question of fact regarding coverage, trigger the duty to defend, and that duty continues until such time as facts are shown to foreclose coverage (or the parties settle).

<u>Travelers Cas. & Sur. Co.</u>, 685 F.3d at 31 (citations omitted). Extrinsic evidence obtained during discovery may reveal that the only occurrence(s) of property damage happened prior to October 2006, but "the pleadings test focuses on the pleading allegations without consideration of extrinsic evidence; therefore, the duty to defend may arise even where 'known facts conflict with the facts alleged in the . . . complaint.'"   <u>Id.</u> at 25 (quoting <u>Flori</u>, 388 A.2d at 26).

In its effort to convince the Court that GeoVera's duty to defend has not been triggered by the underlying state court action, GeoVera analogizes the instant case to a First Circuit case.   In the latter case, the First Circuit held that an insurance policy did not cover property damage when car wash equipment malfunctioned, the malfunction was discovered, and the insured filed suit against the manufacturer all before the inception of the insurance policy, but the insured had continued

11

to experience the damage from the equipment's malfunctions after the commencement of the policy period. Bartholomew v. Appalachian Ins. Co., 655 F.2d 27, 28 (1st Cir. 1981). The analogy to the timing of damage, discovery, and litigation in the underlying state court action is clear; but here, the Complaint contains allegations that are untethered to a specific year or timeframe, which compels a different conclusion.

Moreover, and as Poulton argues, the Rhode Island Supreme Court has considered separate, similar occurrences of property damage to potentially fall within insurance coverage when continuous exposure to the same occurrence might not. See Employers Mut. Cas. Co. v. Arbella Prot. Ins. Co., 24 A.3d 544, 557 (R.I. 2011). Poulton's point is well taken. The allegations in the Complaint can be read to suggest that separate occurrences of property damage may have happened rather than continuous exposure, as GeoVera would have it. The discovery process will flesh this out; but for now, the benefit of the doubt favors Poulton.

2. Business Exclusion

GeoVera argues that the claims in the Complaint "clearly fall" within the business exclusion of the policy at issue because the water drainage that allegedly caused the damage to the Farm's property originated from the 29-bedroom apartment

complex operated by Sandy Point Village, LLC on Lot 191.[11]
GeoVera also argues that the business exclusion applies to
preclude coverage because it construes the Complaint's
allegations to indicate that the water and effluent was directed
onto the Farm's property through pipes and other drain conduits
using both lots of land. The policy's exclusions to personal
liability coverage include an exclusion for "'property damage'
arising out of or in connection with a 'business' conducted from
an 'insured location' or engaged in by an 'insured', whether or
not the 'business' is owned or operated by an 'insured' or
employs an 'insured.'"[12]

In his objection to GeoVera's Motion for Judgment on the
Pleadings, Poulton concedes that Lot 191 is not an "insured
location" covered by GeoVera's policies, but he asserts that Lot
192 is an "insured location" that was covered by the policy and
that the policy's business exclusion cannot apply because Lot
192 is vacant, with no businesses operating on it. Paragraph 14
of the Complaint refers to the apartment complex as located on
Lot 191, and there is no indication in the Complaint that a
business is operated from Lot 192, which Poulton contends is
vacant. Even so, the business exclusion might still apply if

---

[11] Mem. in Supp. of Pl.'s MJP 21, ECF No. 9.

[12] Compl. Ex. C 17.

all of the damage to the Farm's property flowing from Lot 192 stems from Poulton's engagement in the business operated from Lot 191. But the Complaint does not make this allegation. As stated above, paragraph 16 alleges a broad set of facts about the installation of PVC pipes, drains, and other conduits on Lot 192 that directed drainage onto the Farm's property. But paragraph 16 does not allege that these installations were in any way connected to the apartment complex that operates from Lot 191; to make this inferential leap at this early stage of litigation would contravene the principle that any doubts about the allegations are to be resolved in favor of the insured. <u>See</u> <u>Narragansett Jewelry Co.</u>, 555 F.3d at 41. GeoVera is therefore not entitled to a declaration at this stage that the policy's business exclusion precludes coverage of the Farm's claims in the state court action.

3. Pollution Exclusion

GeoVera also asserts that the policy's pollution exclusion provision bars Poulton's claim for coverage for the Farm's claims against him because the Farm has alleged damage caused by pollutants as defined by the policy's exclusion. Poulton counters that the pollution exclusion is inapplicable because GeoVera has alleged damage from surface water run-off, which is not included in the policy's definition of "pollutant."

With respect to Lot 192, the Complaint alleges that Poulton "installed and/or maintained one or more PVC pipes and other drains and conduits . . . that unreasonably direct drainage of surface water and sediment directly onto [the Farm's property]."[13] In addition, the Complaint alleges that "[t]he unreasonable drainage of surface water and erosion onto [the Farm's property] has irreparably altered the water table" and that "engineers halted the installation [of a drain] to avoid the dispersion and direct drainage of effluent into the drain's fresh water stream outlet."[14] Basically, the damage alleged is from water and effluent drained on to the Farm's property from Poulton's property.

The policy's "Special Provisions" section added a pollution exclusion to the personal liability coverage. The exclusion includes, in pertinent part, "'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at, on, in or from any 'insured location' . . . ."[15] "Pollutants" is expressly defined as "any solid, liquid or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

---

[13] Compl. ¶ 16.

[14] Id. ¶ 17.

[15] Compl. Ex. C Special Provisions 1, ECF No. 1-4.

alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."[16]

Neither surface water nor effluent are explicitly included in the policy's definition of pollutant. While "waste" can certainly mean effluent in some contexts, it is not clear that the definition of pollution here would include effluent. When a policy's terms are capable of more than one reasonable meaning, then the policy is strictly construed in favor of the insured and against the insurer. <u>Derderian v. Essex Ins. Co.</u>, 44 A.3d 122, 127 (R.I. 2012); <u>Town of Cumberland v. R.I. Interlocal Risk Mgmt. Tr., Inc.</u>, 860 A.2d 1210, 1215 (R.I. 2004).[17] The Court therefore finds that the pollution exclusion would not necessarily exclude coverage by the policy for the claims that the Farm has made against Poulton in the state court action.

B. Whether Poulton's Counterclaim for Bad Faith Should Be Dismissed

In Poulton's counterclaim, he alleges that GeoVera's offer to defend under a reservation of rights was in bad faith pursuant to Rhode Island General Laws § 9-1-33, and he seeks a declaratory judgment that GeoVera has a duty to defend and that

---

[16] <u>Id.</u>

[17] Moreover, as this Court has remarked in the past, "the only clear principle from the abundance of pollution exclusion cases is that the issue is always fact driven and hotly contested." <u>Picerne-Military Hous., LLC v. Am. Int'l Specialty Lines Ins. Co.</u>, 650 F. Supp. 2d 135, 140 n.3 (D.R.I. 2009).

GeoVera is not entitled to recover any defense expenses that it incurs while defending under a reservation of rights. In GeoVera's Motion To Dismiss Poulton's counterclaim, it argues that the counterclaim for bad faith must be dismissed because GeoVera's offer to provide a defense under a reservation of rights is not bad faith as a matter of law. GeoVera emphasizes that, while its reservation of rights included the right to seek recovery of expenses if it was ultimately held that the policy did not cover the Farm's state court action against Poulton, GeoVera did not condition its defense on its ability to ultimately recover its expenses. Poulton argues that all of GeoVera's conduct prior to filing the declaratory judgment action before this Court was in bad faith, including the time GeoVera took to respond to Poulton's initial notice of the claim, that GeoVera offered a defense but under a reservation of rights, and that GeoVera filed the instant declaratory judgment action.

Rhode Island General Laws § 9-1-33[18] "provides a cause of action for an insured when an insurer wrongfully and in bad

_____

[18] R.I. Gen. Laws § 9-1-33(a) states, in relevant part, that:

> Notwithstanding any law to the contrary, an insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing the policy when it is alleged the

17

faith refuses to pay or settle an insurance claim." Lewis v. Nationwide Mut. Ins. Co., 742 A.2d 1207, 1209 (R.I. 2000). "It has long been held in this state that a bad faith action does not exist until the plaintiff first establishes a breach of contract." Wolf v. Geico Ins. Co., 682 F. Supp. 2d 197, 198 (D.R.I. 2010); see also Lamoureaux v. Merrimack Mut. Fire Ins. Co., 751 A.2d 1290, 1293 (R.I. 2000) ("Before a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract.").

There is no question that "[a]n insurer may seize the initiative and seek resolution of coverage questions, including the duty to defend, in a declaratory judgment action." Travelers Cas. & Sur. Co., 685 F.3d at 25; see also Emhart Indus., Inc., 559 F.3d at 74 ("Under Rhode Island law, questions of coverage, including the duty to defend, may be addressed in a separate declaratory judgment action."). "[A]n insurer wishing to avoid liability may bring a declaratory judgment action in order to clarify coverage terms without the action necessarily being viewed as a 'bad-faith maneuver.'" Labonte v. Nat'l

insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance. In any action brought pursuant to this section, an insured may also make claim for compensatory damages, punitive damages, and reasonable attorney fees.

Grange Mut. Ins. Co., 810 A.2d 250, 254 (R.I. 2002) (quoting Rumford Prop. and Liability Ins. Co. v. Carbone, 590 A.2d 398, 401 (R.I. 1991), abrogated on other grounds by Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002)). The Rhode Island Supreme Court has stated that "an insurer has the right to debate a claim that is fairly debatable." Skaling, 799 A.2d at 1010. It is also well settled that an insurer may seek a resolution of a coverage question while simultaneously defending in the underlying cause of action under a "reservation of rights." See Shelby Ins. Co. v. Ne. Structures, Inc., 767 A.2d 75, 76 (R.I. 2001).

After examining the letters exchanged between the parties prior to the inception of this declaratory judgment action, it is clear that GeoVera offered to provide an immediate defense while reserving its right to seek a judicial determination about whether its policy covered the claims in the state court action.[19] As a matter of law, therefore, GeoVera did not act in bad faith by seeking a judicial declaration of its obligations to Poulton.

Poulton also argues that GeoVera proceeded in bad faith by not acknowledging Poulton's claim within fifteen days as

---

[19] See Compl. Ex. I, ECF No. 1-11; see also Compl. Exs. E-H, ECF Nos. 1-7 through 1-10.

19

required by Rhode Island Administrative Code § 11-5-73:6(A). Rhode Island Administrative Code § 11-5-73:2 provides that "[n]othing herein shall be construed to create nor imply a private cause of action for violation of this regulation." See also Unfair Claims Settlement Practices Act, R.I. Gen. Laws § 27-9.1-1 et seq. ("Nothing contained in [the Unfair Claims Settlement Practices Act] shall be construed to create or imply a private cause of action for violation of this chapter."). While the slight delay in initially responding to Poulton's request for a defense in the state court action may provide relevant evidence to resolve a claim for bad faith, it does not, on its own, provide a basis for maintaining a claim for bad faith as part of Poulton's counterclaim.

With respect to Poulton's request for a declaratory judgment that GeoVera cannot recover any defense expenses incurred while defending under a reservation of rights, both parties cited several cases decided in courts around the country that have either allowed or disallowed an insurance company to recover costs expended during a defense prior to a determination that a policy did not cover the claims alleged. There is no dispute that this is an open question of law in Rhode Island, but the Court need not address this issue at this early stage. It is the Court's understanding that GeoVera has not yet

incurred any costs of defense because Poulton refused its offer to defend under a reservation of rights, so there are currently no costs to recoup.  To decide this issue of law now would be premature, especially because it is before the Court on a motion to dismiss a counterclaim seeking a declaratory judgment that GeoVera could never recoup costs that it has not yet incurred.

GeoVera's Motion To Dismiss Poulton's counterclaims is therefore granted in part and denied in part.  To the extent that Poulton's counterclaim alleges that GeoVera has proceeded in bad faith pursuant to Rhode Island General Laws § 9-1-33, the counterclaim is dismissed.  Poulton's counterclaim for a declaratory judgment that GeoVera has a duty to defend proceeds for the reasons set forth in Section A, supra, and his counterclaim for a declaratory judgment that GeoVera may not recoup its costs of defense will proceed as well, as it may be ripe later.

C. Poulton's Motion To Dismiss or Stay Pending Outcome of State Court Action

Poulton requests that, after concluding GeoVera owes him a duty to defend, the Court dismiss GeoVera's complaint because the question of whether GeoVera has a duty to indemnify Poulton can be resolved in the state court action.  Poulton argues that the factual questions determined in state court are the same as those that will need to be litigated in this case.  In the

alternative, Poulton requests that the Court stay this case pending resolution of the state court action.

The Court declines Poulton's invitation to exercise its discretion to abstain from hearing GeoVera's declaratory judgment action. The Court has narrowly denied GeoVera's Motion for Judgment on the Pleadings and has made clear that the discovery process is likely to reveal evidence that further informs whether GeoVera's duty to defend will continue. GeoVera's decision to litigate its claim that its policy does not cover the Farm's claims against Poulton in the state court action is well founded under prior case law. See, e.g., Travelers Cas. & Sur. Co., 685 F.3d at 25; Emhart Indus., Inc., 559 F.3d at 74; Labonte, 810 A.2d at 254; Conanicut Marine Services, Inc. v. Ins. Co. of N. Am., 511 A.2d 967, 971 n.10 (R.I. 1986).

   D. Poulton's Motion To Certify to Rhode Island Supreme
   Court

Poulton also requests that this Court certify the following question of law to the Rhode Island Supreme Court:

   Whether an insurer may satisfy both its duty to deal
   in good faith with its insured and its duty to defend
   by issuing a unilateral reservation of rights letter
   to its insured 'offering' a defense, the acceptance of
   which is conditioned on the insured's agreement to
   reimburse the insurer all defense costs that it incurs
   providing the very 'defense' it has offered, if the

insurer is successful in its declaratory judgment action against its insured.[20]

The Court denies Poulton's Motion To Certify for three reasons. First, the series of letters attached to GeoVera's complaint do not support Poulton's claim that GeoVera conditioned its offer to defend upon a specific reservation of its rights with respect to an ability to recoup costs down the road. Second, the case law is clear that GeoVera has not acted in bad faith by offering to defend under a general reservation of rights and subsequently filing a declaratory judgment action in this Court to determine its obligations to Poulton. See Travelers Cas. & Sur. Co., 685 F.3d at 25; see also Emhart Indus., Inc., 559 F.3d at 74; Labonte, 810 A.2d at 254; Conanicut Marine Services, Inc., 511 A.2d at 971 n.10. Third, for the reasons previously stated, the issue Poulton presents is not yet ripe for this Court's close examination, including whether the question should be certified to the Rhode Island Supreme Court.

IV. Conclusion

For the reasons stated herein, GeoVera's Motion for Judgment on the Pleadings declaring that Poulton is not entitled to insurance coverage (ECF No. 8) is DENIED; GeoVera's Motion To

---

[20] Mot. for Certification to R.I. Supreme Ct. Ex. A, ECF No. 15-1.

Dismiss Poulton's counterclaim (ECF No. 8) is GRANTED IN PART AND DENIED IN PART; Poulton's Motion for Judgment on the Pleadings that Poulton is entitled to insurance company's defense in the state court action (ECF No. 13) is GRANTED IN PART to the extent explained above; Poulton's Motion To Dismiss or, in the alternative, to stay this case pending resolution of the state court action (ECF No. 14) is DENIED; and Poulton's Motion To Certify a Question of Law to the Rhode Island Supreme Court (ECF No. 15) is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:  September 26, 2017